LOUISE E. WALKER V. J. H. QUEAL, et al., Appellants.

MECHANIC'S LIEN: SUBCONTRACTOR: PRIORITY BETWEEN: PLEADING: OBJECTION IN COURT BELOW. A subcontractor who does not give the statutory notice to the owner will be held junior to those who do, though his statement was filed first.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

WEDNESDAY, MAY 16, 1894.

ACTION in equity to ascertain and settle the order of payment of certain claims for mechanics' liens. There was a hearing on the merits, and a decree from which J. H. Queal & Co. appeals.—*Affirmed.*

*Read & Read* for appellant.

*Chas. A. Bishop* for appellee Louise E. Walker.

*A. A. Haskins* for appellee H. A. Eaton.

ROBINSON, J.—In May or June of the year 1890, the plaintiff and the defendant Fred Hunnell entered into an agreement, afterward reduced to writing, by which Hunnell agreed to furnish the materials for, and to construct and complete for the plaintiff, a dwelling house and stable on lot number 1 in Oak Park, for three thousand three hundred and seventy-five dollars. Hunnell was to accept in payment lots numbered 344 and 355, and the south half of lot 345, situated in Mann's second addition to Lake Park, for the sum of one thousand eight hundred and seventy-five dollars. Of the remainder of the contract price, three hundred dollars were to be paid when the foundation should be completed, at least six hundred dollars more when the building should be inclosed and ready for the plastering, and the remainder when the building should be finished. Hunnell entered upon the performance of his contract, but abandoned it before it was completed, and the buildings were then finished by the plaintiff. The appellant, Queal & Co., furnished for the buildings, before Hunnell abandoned them, materials of the value of seven hundred and forty-five dollars and eighty-six cents, and to the plaintiff, after the abandonment, other materials of the value of eighty-three dollars and twenty-six cents. The last item furnished to Hunnell was so furnished on the eleventh day of November, 1890, and the last item in the account against the plaintiff was furnished on the nineteenth day of the next month. Other subcontractors are made parties defendant, some of whom were found by the district court to be entitled to mechanics' liens as follows: Des Moines Marble & Mantel Company, for the sum of one hundred and thirteen dollars and forty-five cents; H. A. Eaton, for the sum of two hundred and eight dollars and fifty-six cents; Boyd & Grigsby, for the sum of three hundred and seventeen dollars and twenty-five cents. The court also found that appellant was entitled to a first lien for eighty-six dollars, and that the other subcontractors named were entitled to their liens in the order stated, and to interest and costs. The court found that plaintiff had paid to Hunnell seven hundred and eight dollars in money, and had conveyed to him lot 355; that the house was completed by her at an expense of five hundred and six dollars and thirty-three cents; and that there was due from her, on her contract with him, the sum of two hundred and eighty-five dollars and sixty-seven cents, and a conveyance of lot 344 and the south half of lot 345. The plaintiff was directed to pay into court the amount so found to be due, to be applied in payment of claims as provided in the decree. Provision was also made for the sale of the lot and half lot, and they were sold for four

hundred and fifty dollars. The appellant recovered judgment against Hunnell for the material furnished to him, but a lien therefor was denied. The plaintiff paid to the clerk the amount required to satisfy the lien established in favor of appellant, and also paid the amount required to satisfy the liens of other defendants specified. In making such payments, she used the sum she was required to pay into court, and the remainder needed was furnished from her private funds. She asks that the proceeds of the real estate be paid to her. The district court ordered that she be so paid the amount remaining after deducting certain expenses of the sale, which amounted to twenty dollars and fifty cents. Queal & Co. appeals from the decree, and from the order described.

I. The first claim made by the appellant is that the plaintiff is personally responsible to it, as an original contractor, for the entire amount of its bill. It appears that, in order to procure the money required to meet her contract with Hunnell, the plaintiff obtained of the Lewis Investment Company a loan on the lot upon which the buildings were to be erected. Before the investment company would pay out the money loaned, it required persons who were furnishing labor or material, for which liens could be claimed, to sign an agreement to the effect that their claims should be junior and inferior to the lien of the mortgage. The appellant signed such an agreement, conditioned on the payment to it of seven hundred and fifty dollars. The claim of the absolute liability of plaintiff is based upon some things she is alleged to have said when the agreement was obtained, and at other times, in regard to the payment of the claim of appellant. It is said that she stated the money had been provided for, and could be obtained of the investment company; that the appellant need not worry; that it would get the money; that she must have the house completed, and would pay for everything that went into it,—and that she made other statements of a similar nature. She denies that she agreed to pay for any material, excepting for that furnished on her order, and we think the appellant has failed to show any agreement on her part to pay for what was furnished to Hunnell. What she said was designed to show that money had been arranged for, which could be obtained of the investment company in payment of claims made on account of the building of the house. That was true, and the appellant should not have been misled nor deceived by anything she stated. She did not say that any portion of the money had been set apart for the use of appellant.

II. No part of the seven hundred and fifty dollars contemplated in the agreement of appellant to make its lien subject to the mortgage has been paid. On the twentieth day of December, or more than thirty days after the last material was furnished to Hunnell, but within thirty days of the furnishing of the last material to plaintiff, the appellant filed its statement for a mechanic's lien, as provided by law, including in it the account for materials furnished to Hunnell, and also to plaintiff. The appellant contends that, as the plaintiff undertook to complete the contract taken by Hunnell, she should be treated as standing in the place of Hunnell, and the account for materials furnished to both treated as con-

tinuous. It appears that the statement of appellant for a lien was filed before the statements of its codefendants, but no notice of it was ever served on the plaintiff. All the money obtained of the investment company, excepting the amount found by the district court not to have been expended, was paid out, and lot 355 was conveyed, as provided by the contract between plaintiff and Hunnell. But it is said that no notice of the claim for a lien was required to be served on plaintiff, in order to preserve it as against her; that payments made by her before the expiration of the thirty days from the furnishing of the last item of the account can not be urged as a defense to the claim of appellant, and that all the payments made by plaintiff were so made before the last material was furnished to Hunnell. Chapter 100 of the Acts of the Sixteenth General Assembly relates to mechanics' liens. Section 6 of that chapter provides that every subcontractor who desires to avail himself of the provisions of that statute "shall file with the clerk of the district court of the county in which the building, erection, or other improvement to be charged with the lien is situated, a just and true statement or account of the demand due him after allowing all credits. * * * Such verified statement or account must be filed by * * * a subcontractor within thirty days from the date on which the last of the material shall have been furnished or the last of the labor was performed. But a failure or omission to file the same within the periods last aforesaid shall not defeat the lien, except against purchasers or incumbrancers in good faith, without notice, whose rights accrued after the thirty * * * * days * * * and before any claim for the lien was filed. *Provided*, that where a lien is claimed upon a railway, the subcontractor shall have sixty days from the last day of the month in which such labor was done or material furnished, within which to file his claim therefor." Section 7 contains the following: "To preserve his lien as against the owner and to prevent payments by the latter to the principal contractor or to intermediate subcontractors but for no other purpose the subcontractor must, within the thirty days as provided in section six, serve upon such owner, his agent or trustee, a written notice of the filing of said claim * * *." It was held, in effect, in *Lounsbery v. Railway Co.*, 49 Iowa, 256, that the lien of the subcontractor is statutory, and that it matters not what knowledge the owner may have; that constructive notice is not recognized by the statute; and that, if the statutory notice is not given, the lien is lost. The right to a lien in some cases where no statement for it had been filed was to some extent recognized, and that was held to be the law in *Bissell v. Lewis*, 56 Iowa, 240, 9 N. W. Rep. 177. When the mechanic's lien is claimed by the principal contractor, as in the case last cited, the owner knows the terms of the agreement, and what has been paid, and what is due under it; and the filing of a formal statement showing those facts is a matter of minor importance, where interests of third persons are not involved, and for some purposes may be omitted without prejudicing the right of the principal contractor to a lien. But where the rights of subcontractors are involved a different rule prevails. The owner may not know of the agreement made by the principal with the

subcontractor nor of the payments made, or amount due, to the latter. He is, therefore, required to give the statutory notice, in order to inform the owner of what he claims, to preserve his lien as against him. It may be that the failure of appellant to give notice in this case did not influence the acts of plaintiff, but we think the rule announced in *Lounsbery v. Railway Co.*, *supra*, is a reasonable and safe one to adopt, and that it is required by both the letter and the spirit of the statute. See *Templin v. Railway Co.*, 73 Iowa, 548, 35 N. W. Rep. 634. Our conclusion is strengthened somewhat by the fact that section 8 of the act specified provides that the subcontractor may file his claim, and give written notice thereof to the owner, after the expiration of the thirty days contemplated in section 7, but that in that case the lien can be enforced against the owner only to the extent of the balance due from him to the contractor when the notice is served. The decree of the district court is consistent with that provision. The appellant fails to show that plaintiff is not entitled to rely upon the failure to give the required notice, and we conclude that she is entitled to do so.

III.   The appellant urges some objection to the allowance made, and the priority given, to some of its codefendants, and insists that it is entitled to the relief demanded because the failure to give notice was not pleaded to its cross petition. We do not think the claim founded upon the condition of the pleading can be sustained. It is apparently made for the first time in this court and in the argument in reply. Moreover, by a fair construction of all the pleadings, the appellant was required to show affirmatively, in support of its cross petition, that it was entitled to a lien, and it failed to do so. We think the evidence sustains the allowance and relief granted by the district court. We find no ground upon which to disturb the decree and subsequent order of that court, and they are, therefore, AFFIRMED.