W. A. STEELE, Appellant, v. G. W. McBURNEY, *et al.*

**Mechanic's Lien.** That a building contract permits the owner to retain a per cent. of the contract price until the completion of the work, does not help a subcontractor who fails to serve the statutory notice of lien within the statutory thirty days. Such a provision is for the benefit of the owner alone.

SAME. The contract provided, "The contractor under the direction of F., architect, acting for the purpose of this contract as *agents* of said owner, shall provide all the materials." *Held*, that the pluralizing of agent was due to clerical error; the contractor was not the agent of the owner in buying material so as to make a principal out of a subcontractor who sold him material.

NOTICE. A sheriff was a member of the owners' (a lodge) building committee which had charge of the making of contracts and the erection of the building. The subcontractor delivered him, in his capacity of sheriff, a notice that plaintiff had filed a subcontractor's lien. The sheriff did not serve this paper within the statutory thirty days. *Held*, there was no notice to the lodge.

*Appeal from Monroe District Court.*—HON. H. C. TRAVERSE, Judge.

FRIDAY, DECEMBER 13, 1895.

Action in equity to recover an amount due for building materials and to foreclose a mechanic's lien. There was a hearing on the merits, and a judgment for the defendants. The plaintiff appeals.—*Affirmed.*

*L. Kinkead* and *W. C. Kinkead* for appellant.

*Wm. A. Nichol* for appellees.

Robinson, J.—In May, 1893, the defendant the Monroe Lodge, No. 81, Independent Order of Odd Fellows, through its building committee, entered into an agreement in writing with the defendant G. W. McBurney by which the latter undertook to excavate for and to construct the foundation walls and a retaining wall for a building known as the "Temple," and to furnish all labor and material required therefor according to the specifications and drawing prepared for the building under the direction and to the satisfaction of the architect. The work was to be completed on the third day of July, 1893, and final payment therefor was to be made within ten days from the completion of the contract. The contractor was to receive one thousand eight hundred and eighty-five dollars and twenty-five cents for what he agreed to furnish and do, in installments every two weeks, less forty per cent., which the lodge was to retain until the final completion of the work. The plaintiff is a dealer in stone, and furnished to McBurney stone for the building, on which there is due the sum of one hundred and sixty-seven dollars and forty-two cents. The plaintiff asks judgment for that amount, with

interest, and that a mechanic's lien therefor be established. The lodge avers that it paid McBurney in full, as required by the terms of his contract; that nothing is due him, and that it is not liable in this action. The district court rendered judgment against the plaintiff for costs.

I. It is claimed that the lodge constituted McBurney its agent to make the contract in question, and for that reason it is primarily liable to the plaintiff for the amount due him. That claim is based on a provision of the contract, which reads as follows: "The contractor, under the direction and to the satisfaction of Frank Fidler, architect, acting for the purpose of this contract as agents for the said owner, shall and will provide all the materials and perform all the work," for which the contract provided. We do not think the claim can be sustained. The true meaning of the clause is that the contractor shall perform the work and provide the materials which shall be needed under the direction and to the satisfaction of Fidler, who, for the purpose of the contract, shall act as agent for the lodge. The use of the plural for agent appears to have been a clerical error. This conclusion is sustained by the contract as an entirety, and by the interpretation given it by the parties to it and by the plaintiff. The evidence does not justify the holding that the lodge purchased the stone of him.

II. It is said that the lodge should be held responsible for the amount due the plaintiff, for the reason that the contract required it to hold forty per cent. of the contract price until the completion of his work, and that was not effected until the second day of August, 1893. It is further contended that notice of the claims of the plaintiff was duly served on the lodge, and that it had actual knowledge of it within

thirty days from the furnishing of the last stone under the contract. The contract itself does not purport to be for the benefit of the subcontractor. The provision for holding a part of the contract price until the conditions of the contract were fully complied with was for the benefit of the lodge, to secure the performance of the contract, and to protect itself against such claims as might be enforced against it. The provision did not of itself give to the plaintiff any right against the lodge. To enforce his demand against the property it was necessary for the plaintiff to take the steps pointed out by the statute to perfect and preserve a lien. It is said that was done. The last stone furnished to McBurney, was one of two car loads shipped to him from Tracy on or about the fifth day of July, 1895. After they were shipped, McBurney wrote that he did not think he could use the stone. The plaintiff told him to use it if possible. At that time McBurney claimed to have completed his contract, and the stone could not have been ordered for the building in question; but on or about the eleventh day of the month he had a settlement with the lodge, and it was found that some changes in the work, and a wall for the cellar way, were required. The remainder of the contract price, excepting twenty-five dollars, was paid to McBurney, and he then built the wall, using for that purpose, the plaintiff claims, one of the car loads of stone shipped in July. He did not do the other work required and the twenty-five dollars withheld were used to complete it. This was authorized by the agreement between the parties. It is not clearly shown when the stone was taken from the car. The teamster who hauled the stone states that it was delivered on or before the twenty-seventh of July. McBurney states that it was delivered the latter part of July, although in response to a leading and somewhat complex question he states that it was hauled

and used in the building on the second day of August. It is probable that it was actually used on that date. The plaintiff filed his statement for a lien on the first day of September, 1893, and on the same day he caused to be delivered to the sheriff for service a notice of his claim, and it was filed, addressed to the lodge. The sheriff demanded his fees for service in advance and one dollar was paid him; but he demanded more, and there was delay in forwarding it to him. In consequence of that he did not serve the notice until the fourth day of the month, or more than thirty days from the date on which the last material was furnished and the last labor performed. That was not within the time fixed by the statute for serving the notice to preserve the lien, excepting as to any balance there might be due McBurney. But the sheriff was a member of the lodge and of the building committee, and it is said that, as he had the notice in his hands on the first day of September, he is chargeable with knowledge of the contents as of that date, and his knowledge must be imputed to his principal. We find nothing in the record to show the duties of the building committee excepting that it had charge of the making of contracts and the erection of the temple. Whether it was in existence when the notice was delivered to the sheriff does not appear. We cannot assume from the evidence before us that notice in regard to the claim of the plaintiff to a person who had been a member of the committee was notice to the lodge. But it is clear that the notice was not delivered to the sheriff as a member of the lodge or of its committee, but in his official capacity to be served on the lodge, and notice to him was not notice to the latter. It was held in *Walker v. Queal,* 91 Iowa, 704 (58 N. W. Rep. 1084), and in *Lounsbury v. Railway Co.,* 49 Iowa, 256, that to preserve this lien as against the owner, the statutory notice must be given, and that it matters

not what knowledge of the claim of the subcontractor the owner may have, it will not be sufficient to charge him in the absence of the notice required by the statute. We conclude that in this case notice was not served in time to preserve the lien of the plaintiff as against the lodge. Since nothing was due McBurney when the notice was actually served, it was ineffectual to fix or create any liability. *Thompson v. Spencer,* 95 Iowa, 265 (63 N. W. Rep. 695).

III. Some claim is made by the appellant that the lodge is liable for the stone, because it paid the freight due upon it, and liability for the amount in controversy is also urged on other grounds. It is sufficient to say of the claims which are not disposed of by what we have already said that we have considered them with care, but do not find any of them to be well founded. The judgment of the district court is *affirmed.*